**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

STEPHEN M. HUGHES,

        Plaintiff,

v.                                                       Case No: 6:15-cv-280-Orl-40GJK

GEICO GENERAL INSURANCE COMPANY,

        Defendant.
_____/

## ORDER

This cause is before the Court on Plaintiff's Motion for Clarification and For Partial Reconsideration, (Doc. 139), Defendant's Response in Opposition, (Doc. 141), Defendant's Motion for Reconsideration, (Doc. 140), and Plaintiff's Response in Opposition, (Doc. 142). Both of the pending motions pertain to the Court's Order prohibiting Defendant's expert witness in the field of accident reconstruction, Mr. Bryant Buchner, from testifying in this matter. (Doc. 138). Upon due consideration, the Court grants Plaintiff's Motion for Clarification and Reconsideration (Doc. 139), and denies Defendant's Motion for Reconsideration. (Doc. 140).

### I.    BACKGROUND

This action arises from a multi-vehicle collision that occurred on December 14, 2006, in Titusville, Florida. (Doc. 112, pp. 1–2). Plaintiff Stephen Hughes was inside his vehicle, stopped at a red light, when a vehicle driven by Mr. Gary Cooper collided with the rear of the vehicle immediately behind the Plaintiff. (*Id.*). Mr. Cooper's vehicle caused the vehicle stopped behind the Plaintiff to collide with the Plaintiff's vehicle. (*Id.*). The

parties agree that Mr. Cooper was negligent in the operation of his vehicle, leaving only the issue of damages for the jury's deliberation. (*Id.* at p. 2).

### A. Plaintiff's Motion in Limine

The Plaintiff timely filed a motion in limine in which he sought to prevent Mr. Bryant Buchner from testifying, arguing that Mr. Buchner's testimony "will serve only to confuse and mislead the jury such that its probative value, if any, is substantially outweighed by its unfairly prejudicial effect." (Doc. 119, ¶ 16). Plaintiff supports his Rule 403 argument by further requesting the Court to limit Mr. Buchner to matters contained in his expert disclosure and prohibiting him from relying upon testing not disclosed in his expert report. (*Id.*).

Plaintiff argued in his motion in limine that Mr. Buchner advanced five opinions in his expert report, as follows:

1. The impact speed of the Monte Carlo into the Ram was nearly 8 miles per hour;
2. The delta V of the Ram pickup driven by Stephen Hughes was less than 5 mph;
3. The PDOF of the Ram was at the 6.00 o'clock position;
4. The Ram crash pulse was near 150 ms; and
5. The peak G's were near 3 G's.

(*Id.* at p. 11).

Since Mr. Buchner failed to explain in his expert report how he arrived at these conclusions, and because he is limited to the facts disclosed in his expert report, the Plaintiff contends "[t]his technical information, standing alone, is not helpful to the jury and tends only to mislead the jury and confuse the issues such that its unfairly prejudicial effect substantially outweighs its probative value (if any)." (*Id.*). Plaintiff cites to Rules 403,

2

and 702, Federal Rules of Evidence, and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591-91 (1993).

Plaintiff also sought to exclude testing conducted by Mr. Buchner after the deadline established by this Court for the disclosure of expert opinions. (*Id.* at p. 12). In support of this proposition, Plaintiff cites the Case Management Scheduling Order[1] in the instant case and *Solgado v. G.M. Motors Corp.*, 150 F.3d 735 (7th Cir. 1998), holding that and expert report must not be "sketchy, vague, or preliminary in nature." Here Plaintiff argues that Mr. Buchner's report which provides bald statements concerning forces at play during the collision, lacking any reference to reliable scientific methodology, renders his "opinions" more prejudicial than probative. Additionally, Plaintiff objects to allowing Mr. Buchner to cure this deficiency by referring to testing conducted well-after the date established for expert disclosures. (Doc. 119, pp. 12-13).

The motion in limine discloses that on July 21, 2017—about two months too late— Mr. Buchner produced a number of materials which constitute testing designed to put meat on the bones of the 5 opinions offered in the report. (*Id.* at p. 12). This Court addressed each of these untimely documents in its Order striking Mr. Buchner. (*See* Doc. 138, pp. 11-14). The Defendant filed their response in opposition to Plaintiff's motion in limine, arguing that Mr. Buchner's testimony is indeed helpful and that Rule 26 governing expert disclosures envisions that an expert may supplement his or her report. (Doc. 123, pp. 9-10). Accordingly, Defendant asserts that the "demonstrative aids" produced well after the deadline established by this Court should be permitted. (*Id.*). Defendant cites

---

[1] The CMSO clearly provides that "[e]xpert testimony on direct examination at trial will be limited to the opinions, bases, reasons, data, and other information in the written expert report disclosed pursuant to this Order." (Doc. 57, p. 4).

*Finch v. Crews*, 2014 WL 12651187 at *9-10 (S.D. Fla. Jan. 6, 2014), holding that an expert may use a demonstrative chart on DNA results "when the information shown on the chart was timely provided to opposing party in a report.). (*Id.* at p. 11). Defendant argued that "the demonstrative aids . . . used by Buchner are simply demonstrations of the expert opinions that were timely disclosed in his expert report." (*Id.*)[2]. Accordingly, the issue of whether Mr. Buchner's expert report was adequate and whether tests conducted after the disclosure deadline was squarely before the Court.

### B. The Final Pretrial Conference

The Court addressed a variety of motions during the final pretrial conference, including Plaintiff's motion in limine to exclude Mr. Buchner and to prohibit untimely test data. (Doc. 135, 34:23-25). At no time did Defendant GEICO argue that the Plaintiff's motion in limine was in actuality a disguised *Daubert* challenge filed after the deadline for such motions. To the contrary, the parties briefed the issue of whether Mr. Buchner's testimony—if limited to his expert disclosure and not supplemented by untimely testing— would be more prejudicial than probative.

During the pretrial conference, Plaintiff argued that Mr. Buchner's testimony would confuse and mislead the jury due to the lack of foundation for the opinions being offered. (*Id.* at 54:1-11). Plaintiff further argued that the material disclosed in July, after the expert report was required to be finalized, constituted testing. (*Id.* at 55:7-13; 56:17-18). In

---

[2] The Court found it its order prohibiting Mr. Buchner from testifying that the "demonstrative exhibits" were not in fact demonstrative and constitute the analysis and methodology predicated upon instrumented, crash-testing conducted too late. (Doc. 138). Hence, the untimely trial exhibits dubbed "demonstrative aids" by the defense do not reflect information that was timely provided by the expert. The untimely testing is the proof required to make the expert's opinions reliable and verifiable and were required to be disclosed in the Rule 26 report.

4

response, Defendant characterized the newly disclosed exhibits as mere demonstrative aids. (*Id.* at 57:16-24; 59:6-11). Whereupon the Court explained the interplay between Rule 26 and the CMSO:

> [W]hat's not allowed is for an expert to say, by the way, I may do other stuff later, after the close of discovery, when you can't meet it. That's clearly not what's envisioned. So the idea is you have it all done – all the testing, all the exemplars, all the crash tests. All of that's put in the report and turned over to the other side. And they can decide whether they want to depose you, hire another expert who may help them depose you, and the like.
>
> So in this case, the plaintiff can't possibly respond to this testing. And it's outside the scope of discovery, therefore, it should have been done . . . earlier.

(*Id.* at 58:1-24).

Counsel for GEICO insisted the newly disclosed materials were demonstrative aids, and the Court instructed counsel to submit the materials for review. (*Id.* at 61:8-12).

## II.   DISCUSSION

### A.   Exclusion of Mr. Buchner

Upon receipt of the "demonstrative" materials from defense counsel, the Court concluded that the defense had in fact engage in substantial and untimely testing. This testing consists of downloading the diagnostic sensing module, or Airbag Control Module, of the crash vehicle which requires the use of a computer to mine the data and analysis of the resulting data. (Doc. 138, p. 13). The defense also produced calculations and modeling performed by Mr. Buchner through which he discloses the analysis employed to determine the closing speed of the at fault vehicle, including calculations of crush energy and specific citations to vehicle specifications. (*Id.* at p. 12). Other "demonstrative" exhibits consist of the calculations used to support Mr. Buchner's opinions which were

5

absent from his expert report. (*Id.*). The defense "demonstrative" exhibits further reflect a crash test, video recorded and instrumented, designed to prove the expert's opinions to be correct. (*Id.* at pp. 12-13). Had these calculations, tests, vehicle specifications, and black box computer diagnostics been thoroughly been addressed in Mr. Buchner's expert report, the exhibits putting the complex calculations into a visually appealing format would be properly characterized as demonstrative.

GEICO now contends for the first time that Plaintiff failed to file a *Daubert* motion, which results in substantial prejudice to the defense in that they were deprived the opportunity to respond. (Doc. 140, p. 7). GEICO's argument ignores Plaintiff's citation to *Daubert* and Rule 702 in their Motion in Limine. (Doc. 140, p. 7). GEICO is correct that "[a] *Daubert* Motion cannot be re-titled to avoid the meeting of pre-established deadlines [for filing *Daubert* motions]. Such procedural maneuvering would be improper and would defy the clearly established deadlines of the Court's previous Case Management and Scheduling Order." (*Id.* citing *Gov't Employees Ins. Co. v. KJ Chiropractic Ctr. LLC*, 2015 WL 12838853, at *2 (M.D. Fla. Jan. 15, 2015).

The Court completely agrees with GEICO's position that one may not circumvent the deadline set by the Court for the submission of *Daubert* challenges by retitling the motion as a motion to strike or a motion in limine. As the Defendant is well aware, the undersigned authored the *KJ Chiropractic* order. What the Defendant leaves out of its analysis, however, is that in *KJ Chiropractic* counsel for GEICO filed a motion opposing defendant's challenge to GEICO's experts as having been filed after the deadline for *Daubert* motions. (*see* 6:12-cv-01138-PGB-DCI, Doc. 445). Here, GEICO did not oppose Plaintiff's challenge to Mr. Buchner as having been filed after the deadline for *Daubert*

6

motions and elected instead to submit a detailed response in opposition. Had counsel for GEICO desired to contest the timeliness of the Plaintiff's challenge to Mr. Buchner's expert report and opinions, they could have done so. GEICO may not, however, waive an objection to the procedural timeliness of Plaintiff's expert challenge and having received an unfavorable ruling fall back on an argument they elected not to pursue.

Similarly, GEICO's argument that a *Daubert* hearing should have been conducted is misplaced. (Doc. 140, p. 8). GEICO was fully informed that Plaintiff was seeking to exclude Mr. Buchner due to the inadequacy of his expert report and the untimely testing designed to bolster his opinions, and GEICO did not request an evidentiary hearing. The parties presented the matter to the Court based upon Mr. Buchner's written report and the briefs submitted by counsel. The Defendant may not now cry foul that the Court did not conduct an evidentiary hearing that was not requested by GEICO.

### B. Dr. Lee

Having excluded Mr. Buchner as an expert witness, the Court *sua sponte* struck paragraph 34 from Dr. Lee's expert report, because Dr. Lee relies upon the stricken opinions of Mr. Buchner in this portion of his expert report. Counsel for the Plaintiff correctly notes that paragraph 44 of Dr. Lee's expert report also incorporated Mr. Buchner's excluded conclusion that "the peak acceleration of the Hughes truck was 3g (average acceleration of 1.2 – 1.5g)." (Doc. 99-3, ¶ 44). Since Dr. Lee may not rely upon the findings of an expert which have been excluded, the portion of paragraph 44 of Dr. Lee's expert report that is based upon Mr. Buchner's excluded opinion is stricken.

To the extent Dr. Lee is able to render expert opinions as a biomechanical engineer without relying upon Mr. Buchner's calculations or opinions—that is, opinions that are

independent of Mr. Buchner—he may offer such opinions to the jury. To the extent the parties disagree over whether Dr. Lee is competent to offer any expert opinions in the absence of Mr. Buchner's calculations, the Plaintiff shall notify the Court no later than January 25, 2018 of the grounds for their objection.

### III.  CONCLUSION

Therefore, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion for Clarification and Partial Reconsideration (Doc.139) is **GRANTED**, and paragraph 44 of Dr. Lee's expert report reading: "As noted above, the peak acceleration of the Hughes truck was 3 g (average acceleration of 1.2 – 1.5g)" is **STRICKEN**. Counsel for GEICO shall ensure that Dr. Lee is aware that he may not base any of his opinions upon the data accumulated by Mr. Buchner. Defendant's Motion for Reconsideration (Doc. 140) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida, on January 19, 2018.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record